BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
THOMAS J. O'REARDON II (247952)
701 B Street, Suite 1700
San Diego, CA  92101
Telephone: (619) 338-1100
Facsimile: (619) 338-1101
tblood@bholaw.com
toreardon@bholaw.com

Attorneys for Plaintiff and Proposed Class Counsel

[Additional Counsel Appear on Signature Page]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

| | |
|---|---|
| VINCENT D. MULLINS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PREMIER NUTRITION CORPORATION f/k/a JOINT JUICE, INC.,<br><br>Defendant. | Case No.:   C-13-01271 RS<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO EXCLUDE TESTIMONY OF DANIEL A. GRANDE, Ph.D.**<br><br>CLASS ACTION<br><br>DATE:      January 21, 2016<br>TIME:       1:30 p.m.<br>JUDGE:    Hon. Richard Seeborg<br>CTRM:     Courtroom 3, 17th Floor<br><br>Complaint Filed: March 21, 2013 |

# TABLE OF CONTENTS

Page

I. INTRODUCTION .................................................................................................................. 1

II. ARGUMENT ......................................................................................................................... 2

    A. Grande Is Not Qualified to Opine on Standards of Veterinary or Medical Care .................................................................................................................. 2

    B. Too Great a Gap Exists Between Grande's Opinions and the Clinical Research and Conclusions of the Scientific Community ....................... 3

        1. Grande's Opinions Misrepresent the Human Clinical Studies ................ 3

        2. Basic Science and Pre-Clinical Studies Demonstrate Grande's Opinions Are Not Admissible .................................................. 7

        3. The Meta-Analyses Demonstrate Grande's Opinions Are Unreliable ................................................................................................. 9

        4. The Clinical Treatment Protocols ......................................................... 10

III. CONCLUSION ................................................................................................................... 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc.*,
  2006 U.S. Dist. LEXIS 101952 (N.D. Cal. May 18, 2006) .................................................. 10

*Kumho Tire Co. v. Carmichael*,
  526 U.S. 137 (1999) .............................................................................................................. 2

*In re Neurontin Mktg. & Sales Practices Litig.*,
  712 F.3d 21 (1st Cir. 2013) ................................................................................................... 1

*Ojeda-Sanchez v. Bland*,
  2010 U.S. Dist. LEXIS 45333 (S.D. Ga. May 10, 2010) ..................................................... 10

*United States v. Herrera*,
  788 F. Supp. 2d 1026 (N.D. Cal. 2011) ................................................................................ 7

*United States v. Sandoval-Mendoza*,
  472 F.3d 645 (9th Cir. 2006) ................................................................................................ 2

**Secondary Authorities and Rules**

Federal Judicial Center, Reference Manual on Scientific Evidence, (3d ed. 2011) ..................... 1

Fed. R. Evid. 702 ........................................................................................................................... 2

BLOOD HURST & O'REARDON, LLP

00094820

## I.     INTRODUCTION

Premier mostly ducks, dodges and mischaracterizes in its attempt to defend Dr. Grande's unique opinions. For example, Premier argues that whether Joint Juice provides relief from joint pain and the symptoms of arthritis is not at issue, ignoring its own label, its internal documents, its own market research, and the admissions from its own senior executives. It also makes up the "lack of substantiation" doctrine, ignoring cases where the plaintiff has no evidence whatsoever that the product at issue did not do what was advertised. What Premier does not do is defend its expert's opinions with actual scientific support.

Premier does not defend Dr. Grande by showing that his opinions are based on a well-accepted methodology. Premier does not argue Grande's methodology is consistent with the hierarchy of well-accepted scientific research regarding glucosamine and chondroitin. Premier does not dispute that meta-analysis is the strongest evidence nor that at least ten well-conducted meta-analyses pooling results from randomized, controlled trials have all concluded glucosamine and chondroitin do not provide joint health benefits. Premier also does not dispute that all professional guidelines recommend against glucosamine and chondroitin.

Instead, faced with overwhelming evidence against it, Premier recites meaningless boilerplate that Plaintiff's criticism amount to mere disagreement with Grande's opinions or somehow constitutes a lack of substantiation theory, whatever that is. The reality is that Grande's opinions are not the product of a reliable methodology. The record evidence overwhelmingly demonstrates glucosamine and chondroitin do not and cannot provide the advertised joint health benefits. Even Grande does not say glucosamine and chondroitin works, maintaining the evidence is at best "uncertain." In truth, once the fundamental principles about analyzing scientific evidence are applied, Grande's opinions, based at best on cherry-picked portions of only some of the available studies, are unreliable and misleading. *In re Neurontin Mktg. & Sales Practices Litig.*, 712 F.3d 21, 49 (1st Cir. 2013); Federal Judicial Center, Reference Manual on Scientific Evidence, 723-24 (3d ed. 2011) ("Reference Manual on

Scientific Evidence"); Open. Mem., Ex. 8 (Willis Supplemental Declaration), ¶¶2-6.[1]

Finally, Premier does not dispute that Grande's opinions detailed in Sections III.C-F of Plaintiff's motion should be stricken. Plaintiff moved to strike Dr. Grande's opinions about: (1) recommendations from medical doctors and veterinarians, (2) originally developed by Kevin R. Stone, and (3) drink daily for healthy, flexible joints. Because Grande's opinions on those topics are irrelevant, unreliable or likely to mislead, they must be stricken.

## II.    ARGUMENT

### A.    Grande Is Not Qualified to Opine on Standards of Veterinary or Medical Care

Premier argues that Grande is a leader in cartilage repair, who has worked extensively in the area of regenerative medicine and tissue engineering. *See* ECF No. 105 (Defendant's Opposition to Plaintiff's Motion to Exclude Testimony of Daniel A. Grande, Ph.D. ("Opp.")) at 4. However, Grande is not a medical doctor or veterinarian. Thus, Grande is not qualified by knowledge, skill, experience, training, or education to offer opinions on clinical treatment protocols, doctor recommendations, or the use of glucosamine in the veterinary medicine field. *See* ECF No. 100 (Memorandum in Support of Motion to Exclude Testimony of Daniel A. Grande, Ph.D. ("Open. Mem.")) at 19-20, 22; Fed. R. Evid. 702; *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 157 (1999) ("Nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert."). As discussed below, Grande's opinions about clinical treatment protocols should also be excluded because they contradict all of the clinical treatment guidelines. *See* §II.B.4, below. Grande's opinion about veterinarian medicine also is irrelevant. *United States v. Sandoval-Mendoza*, 472 F.3d 645, 654 (9th Cir. 2006) (expert opinions are relevant if the knowledge underlying it has a "valid . . . connection to the pertinent inquiry").

Accordingly, Grande's opinions on these topics must be excluded.

---

[1] "Open. Mem. Ex. __" refers to exhibits attached to the Declaration of Timothy G. Blood in Support of Plaintiff's Motion to Exclude Testimony of Daniel A. Grande, Ph.D. *See* ECF No. 100-1.

BLOOD HURST & O'REARDON, LLP

00094820

**B.   Too Great a Gap Exists Between Grande's Opinions and the Clinical Research and Conclusions of the Scientific Community**

### 1.   Grande's Opinions Misrepresent the Human Clinical Studies

Ignoring the mountains of human clinical studies, Premier argues Grande's opinions are supported by just three of them: GAIT I, LEGS and MOVES. Opp. at 6-9.[2] Even these three studies do not say what Premier says they do. They support Plaintiff's position, not Grande's. The dispute about those studies is not a matter of disagreement going to the weight of the evidence. There is too great a gap between the actual findings from those studies, the totality of the evidence, and Grande's opinions for them to be reliable.

Premier's misrepresentations about the leading GAIT studies are glaring. Premier and Grande only discuss an "exploratory," post-hac suggestion from GAIT I, which the GAIT authors subsequently tested and disproved in 2010 in GAIT III. Opp. at 6-7; *but see* Open. Mem. at 12. Premier and Grande never mention GAIT III. Instead, without citing any portion of the study report, Premier argues that GAIT I reported "significant improvement in a number of pain and function categories measured for osteoarthritis patients taking glucosamine and chondroitin, including for persons who experience moderate-to-severe knee pain." Opp. at 6-7. That argument is highly misleading. For the overall group studied (around which GAIT I was powered and designed), there were no differences between glucosamine plus chondroitin versus placebo in terms of the one primary outcome measure, a 20% decrease in pain, and there was no difference for *any* of the 13 secondary outcomes measured either, including pain, stiffness, function, joint swelling, effusion, and patient's global assessment. CC-Ex. 50 (GAIT I) at JointJuice010226-27.[3] For the small sub-group of patients (n=354) with moderate-to-severe knee pain, "[e]xploratory analyses suggest[ed]" glucosamine plus chondroitin was more effective than placebo, however, Celebrex, glucosamine or chondroitin alone were not better than placebo for those in that sub-group. *Id.* at JointJuice010220, 10229. For the sub-group of

---

[2]   Plaintiff's motion highlights a number of other well-conducted, human clinical studies that Grande's opinions mischaracterize or ignore, including Kwoh, 2014 (the "JOG" study), Yang, 2015, Rozendaal, 2008, Runhaar, 2015, and Messier, 2007. *See* Open. Mem. at 13-15.

[3]   "CC-Ex. __" refers to exhibits attached to the Declaration of Timothy G. Blood in Support of Plaintiff's Motion for Class Certification. *See* ECF No. 88-2.

BLOOD HURST & O'REARDON, LLP

patients with mild knee pain (n=1,229), as compared to the negative findings in the overall group, the primary outcome "showed even smaller treatment effects." *Id.* at JointJuice010229. Of course, Premier and Grande never mention GAIT III, and skip over that GAIT III specifically set out to test only patients with moderate-to-severe knee pain, finding over a two-year period (GAIT I was six months) there was no difference between placebo and glucosamine/chondroitin for pain or function. CC-Ex. 53 (GAIT III) at 5; *see also* Open. Mem. Ex. 11 (Miller & Clegg, 2011) at 138082-83 (confirming that GAIT III found "no clinically significant difference in WOMAC pain or function compared with placebo").

Premier argues that Plaintiff's expert, Dr. Willis, agrees with Premier about GAIT and it is only Plaintiff's counsel who disagrees. Opp. at 7. Not so. Dr. Willis' declarations and deposition testimony are clear about GAIT I, its exploratory sub-group finding, and the later rejection of that finding in GAIT III:

> Q: So in the GAIT study, for patients who had moderate to severe pain, the study concluded that glucosamine and chondroitin provided a reduction in those patients' pain that was statistically and clinically significant, correct?
> A: No.

Reply Brief Ex. 1[4] (Willis Depo.) at 53:18-24; *id.* at 54:24-55:5 (GAIT's authors expressly state the limitations to their moderate-to-severe subgroup analysis), 60:21-25 (GAIT II and GAIT III examined GAIT's exploratory findings); 244:14-17 ("In the GAIT 2 and GAIT 3, they did not detect this effect."); Open. Mem., Ex. 8 (Willis Supplemental Declaration), ¶¶56-60 (discussing the trilogy of GAIT studies, which found "no statistically significant differences in joint-space width, pain scores or function scores for any of the treatments compared to placebo").[5]

This is what the evidence actually is about the GAIT results: In 2006, GAIT I results demonstrated there was no difference between glucosamine plus chondroitin versus placebo for any measures of pain, stiffness, function, swelling or global assessment. For those with

---

[4] "Reply Brief Ex. __" refers to exhibits attached to the concurrently filed Reply Declaration of Timothy G. Blood.

[5] Premier's counsel failed to ask any questions about GAIT II or GAIT III, including questioning Dr. Willis about the opinions in his declarations on those studies.

mild pain there was even less of a difference versus placebo. An exploratory analysis done after the fact indicated there might be a benefit for glucosamine plus chondroitin versus placebo for those with moderate-to-severe pain. However, by 2010 in GAIT III, this exploratory hypothesis was tested and found not true. Meanwhile, in 2008, GAIT II results were published and no structural, joint space narrowing differences were detected for those consuming glucosamine plus chondroitin versus placebo over a two-year period. In 2010, Jackson et al. published additional findings from GAIT and reported that orally consumed chondroitin was undetectable and little reaches the joint, and combining chondroitin with glucosamine interferes with glucosamine absorption into circulation.[6]

Plaintiff's motion also describes Grande's misrepresentations of the LEGS study. Open. Mem. at 12-13. Premier does not even attempt to rebut this. LEGS found no pain reduction or physical function benefit for those consuming glucosamine plus chondroitin versus placebo, and also reported "[f]or JSN, our finding for this combination [of glucosamine plus chondroitin] did not support the overall findings of the GAIT study." Open. Mem. at 12; Reply Brief Ex. 1 (Willis Dep.) at 246:2-4.[7] Instead, Premier cites a portion of Dr. Willis' deposition transcript where he agreed that Premier's lawyer read a sentence correctly from LEGS about a non-significant finding regarding joint space width in GAIT II. Opp. at 7 (citing Willis Depo. at 245:19-22); *see also* CC-Ex. 52 (GAIT II) at JointJuice011196 ("no treatment achieved a predefined threshold of clinically important difference in JSW loss as compared to

---

[6] *See also* Open. Mem. Ex. 12 (LEGS) at 1 (summarizing GAIT I and II, the authors of the LEGS study stated: "The GAIT study, which is the only published large randomized clinical trial evaluating a glucosamine hydrochloride-chondroitin sulfate combination regimen for symptomatic knee OA, found no overall long-term symptomatic or significant structural benefit."); CC-Ex. 53 (GAIT III) at 5.

[7] The JSN conclusion from LEGS has not been replicated and is inconsistent with the JSN conclusion of GAIT II. Premier's reliance on that outcome measure violates the fundamental scientific principle of replication or repeatability: "A good general rule of thumb in science is never rely on any experimental finding until it has been independently replicated." *See* FJC Reference Manual on Scientific Evidence at 77; *see also id.* at 604 ("It is important that a study be replicated in different populations and by different investigators before a causal relationship is accepted by epidemiologists and other scientists."). Wandel, 2010, a meta-analysis, pooled the results from six clinical trials measuring JSN and reported glucosamine, chondroitin, and their combination do not impact JSN. CC-Ex. 56 (Wandel, 2010) at JointJuice087980. Consistent with Wandel, 2010, four years later, Kwoh, 2014 (JOG study) also reported no JSN, pain or function benefits from glucosamine consumption. Open. Mem. Ex. 13 (JOG study) at 934-35.

placebo").[8] Premier and Grande do not dispute that LEGS determined the combination of glucosamine and chondroitin do not improve pain or physical function more than placebo. Open. Mem. Ex. 12 (LEGS) at 1. This is fully consistent with GAIT I and GAIT III, the only other studies that have examined pain relief and physical function after consuming a combination of glucosamine and chondroitin versus placebo. Grande's opinions about the LEGS study or extrapolations that LEGS supports his overall opinions, are therefore unreliable, misleading and should be stricken.

Plaintiff's motion also described the flaws in the MOVES study, in part by attaching several published criticisms of MOVES. *Id.* at 14-15. In opposition, the best Premier can do is point to portions of Dr. Willis' deposition where Premier's lawyer would read words from a study, and then ask Dr. Willis whether she "read that correctly" (referring to portions of the MOVES study report). It should come as no surprise that the words were read correctly. But what Premier chose not to do at deposition is ask Dr. Willis if he agreed with the implication of the selected words that were read or discuss how the passage matched up with his opinions. Premier relies on a deposition gimmick rather than an explanation of the relevance of MOVES within the accepted hierarchy of medical and scientific evidence or that it was funded by Premier's glucosamine supplier and does not compare glucosamine to a placebo pill. Like GAIT III (but not GAIT I), MOVES was designed specifically for testing patients with moderate-to-severe knee OA. The GAIT III authors concluded that over a two-year period, glucosamine plus chondroitin or Celebrex was not more effective than placebo in reducing pain. As one published review of MOVES stated: "Having a proven treatment effect of the active comparator [Celebrex] is the sine qua non of a non-inferiority design. None exists in this setting." Open. Mem. Ex. 17.

---

[8] Premier's argument comparing LEGS and GAIT, and the question cited in Premier's opposition makes no sense. The LEGS study found no pain benefits, but did find statistical JSN differences. GAIT I (what Premier's motion calls the "original GAIT study") did not even test JSN. GAIT I tested pain, and found no benefit (consistent with LEGS). GAIT II tested JSN (but not pain) and found no benefit (inconsistent with LEGS). GAIT III tested pain (but not JSN) and found no benefit (consistent with LEGS). Dr. Willis' declarations and testimony are fully consistent with these facts. Open. Mem., Ex. 8 (Willis Supplemental Declaration), ¶¶ 57-63, 65-66.

1     Thus, Plaintiff's criticisms do not merely express "disagreement" going to the weight
2  of Dr. Grande's opinions. Instead, because there is no basis in fact for his opinions, to permit
3  Grande or Premier to continue misrepresenting objective facts would be substantially more
4  prejudicial than probative, and therefore Grande's opinions must be stricken. *See United States*
5  *v. Herrera*, 788 F. Supp. 2d 1026, 1036 (N.D. Cal. 2011) (excluding expert testimony that was
6  "an amalgam of a whiff of science mixed with unjustified extrapolation").

         **2.    Basic Science and Pre-Clinical Studies Demonstrate Grande's Opinions Are Not Admissible**

9     Premier also argues that Grande's opinions are supported by pre-clinical science. It
10 states that pre-clinical studies "have found that glucosamine and chondroitin taken orally can
11 reach the joints and provide benefits through recognized mechanisms of action." Opp. at 9. In
12 support, Premier misleadingly cites the testimony of Plaintiff's expert, Dr. Silbert, one human
13 industry-funded and conducted study (Persiani, 2005), and one study on dogs (Dodge, 2011).
14 Premier's argument is very misleading. All of the evidence actually demonstrates that
15 glucosamine and chondroitin taken orally does not reach the joints or have any benefit. Only
16 when large amounts are taken (far in excess of the amount contained in a serving of Joint
17 Juice), does an exceedingly small, insignificant amount reach the joints. As with his other
18 opinions, once the sources are reviewed it becomes clear that Grande's opinions about pre-
19 clinical studies are misleading and unreliable.

20    Dr. Silbert is the first person to measure glucosamine in humans after oral
21 consumption. Premier argues Dr. Silbert testified that orally consumed glucosamine "makes its
22 way to the articular cartilage." Opp. at 10. However, Premier fails to mention how much oral
23 glucosamine may reach joints. Premier's opposition quotes the following:

> Q: So this study [Dodge, 2011] establishes that exogenous glucosamine can, in fact, reach the joints and they can be used by the joint cells?
> A: Yeah…

27 *See* Opp. at 11. Premier includes an ellipsis and excludes the rest of Dr. Silbert's testimony:
28 ///

> A: Yeah. Now, if you want me to discuss that, I will discuss it for you.
>
> Q: Well, no. The conclusion of the study is the conclusion of the study, correct?
>
> A: This conclusion does not say how much.
>
> Q: That wasn't my question –
>
> A: But the conclusion – well –
>
> Q: – I'm not asking how much. So let's not get into a debate. I get to ask the questions and your counsel can ask questions of you later.

Reply Decl. Ex. 2 (Silbert Depo.) at 176:10-23. Hoping for a soundbite, Premier's counsel repeatedly cut off Dr. Silbert, and now Premier does it in its opposition with an ellipsis. In fact, Dr. Silbert noted that Persiani, 2005 and Dodge, 2011, are fully consistent with his own human study, and all conclude "that the amounts that get to the joints is miniscule." *Id.* at 182:18-20; *see also id.* at 183:10-11 ("I agree with Persiani, because Persiani showed the same miniscule amounts getting there that I showed."), 157:17-158:11 (Persiani's group "come up with the same amounts that I come up with and basically, and they're nanograms. They're in miniscule amounts, and I do not agree that these miniscule amounts could possibly have any effect."), 159:3-160:21 ("I do not agree that the conclusions [of Persiani, 2005] mean that this has any effect on doing anything, because the amounts are very, very small."), 188:20-189:14, 190:15-23.

Premier's counsel chose not to question Dr. Silbert about this part of his report:

> Like glucosamine, only tiny amounts of chondroitin sulfate reach the blood after human oral ingestion. My conclusion is "Miniscule gets there, and anyhow it doesn't work."

CC-Ex. 46 (Silbert Report) at ¶22. Dr. Silbert's conclusion is fully consistent with a conclusion reached by Towheed, 2009, a meta-analysis published by the prestigious Cochrane Collaboration. Open. Mem. at 7. Discussing the works of Drs. Silbert and Persiani, Towheed 2009 stated:

> The authors concluded that insignificant trace amounts of glucosamine enter human serum after oral ingestion and that this is far below any amount that might contribute directly to chondroitin synthesis.

1   CC-Ex. 55 (Towheed, 2009) at JointJuice640.[9]

2   There is no connection between the miniscule amounts of oral glucosamine that may reach impacted joints and any effect on those joints. Grande's opinions, which are inconsistent with even the pre-clinical studies upon which Premier relies, are unreliable, and more prejudicial than probative. *See* Open. Mem. at 17 (citing Henrotin, 2013, which concluded normal cells do not need and are "completely inhibited" from using exogenous glucosamine, and Block, 2010, which noted at page 7 that "it is highly likely that the intestinal lining, liver or kidney will consume a substantially higher percentage of the orally administered [glucosamine] than joint tissues"); *see also* Reply Brief Ex. 3 (Persiani, 2005, stated "there is currently no clinical justification to use . . . [glucosamine] hydrochloride, as pivotal trials failed to show the same benefit" (citing Towheed, 2005 and Houpt, 1999)).

### 3. The Meta-Analyses Demonstrate Grande's Opinions Are Unreliable

There are ten meta-analyses on glucosamine and chondroitin. All conclude these dietary supplements do nothing. Open. Mem. at 6-7; Open. Mem., Ex. 8 (Willis Supplemental Declaration), ¶73. In opposition, Premier accuses Plaintiff of mischaracterizing these studies. Opp. at 11-12. But Premier never explains how.

Premier cites just two meta-analyses and one review article (that it mischaracterizes as a meta-analysis) in support of Grande's opinions. The first is Wu, 2013. Wu's meta-analysis "aimed to investigate the efficacies of different preparations of glucosamine and possible causes of inconsistencies among trials." Open. Mem. Ex. 5 (Wu, 2013) at 138463. Premier selectively cites to Wu and argues it showed glucosamine consumption for more than six months improves joint function. Opp. at 11. However, the primary outcome Wu analyzed was joint pain. Wu concluded that the type of glucosamine in Joint Juice (glucosamine hydrochloride) "is ineffective for relieving pain in OA patients." Open. Mem. Ex. 5 at 138469.

---

[9]   Premier argues that Dr. Graboff "also acknowledged that *in vitro* and other scientific studies have found that orally consumed glucosamine" reaches impacted joints. Opp. at 11 (citing Graboff Depo. at 149:15-17, 150:13-151:25, 154:6-16). The testimony cited by Premier, which is about the Dodge, 2011 dog bioavailability study. does not support its argument. Dr. Graboff did not provide any assent or agreement. Instead, he testified he was not familiar with the Dodge study because it did not relate to his opinions. *See* Reply Brief Ex. 4 (Graboff Depo.) at 149-151, 154-156.

BLOOD HURST & O'REARDON, LLP

00094820

1   Wu also concluded that glucosamine sulfate also does not improve joint pain. *Id.* According to
2   Wu, three studies showed glucosamine sulfate did not improve joint function at less than six
3   months, but two studies showed it improved function after more than six months. *Id.* at
4   138467. It did not conclude that glucosamine hydrochloride improves joint function after six
5   months. *Id.* Thus, Grande's opinion relies on selectively and misleadingly citing Wu.

6   The second "meta-analysis" cited by Premier is Nakamura, 2011. This citation
7   demonstrates that Premier and Grande do not understand scientific review or evidence-based
8   medicine, at best. "Meta-analysis is a method of pooling study results to arrive at a single
9   figure to represent the totality of the studies reviewed." FJC Reference Manual on Scientific
10  Evidence at 607. Nakamura is not a meta-analysis. *See* Reply Brief Decl. Ex. 5 (Nakamura,
11  2011). Nakamura is a general review that notes the "heterogeneity" among glucosamine
12  studies and "controversy" regarding "publication bias." *Id.* at 138094.

13  The third publication cited by Premier is the Vlad, 2007 meta-analysis. Premier argues
14  Grande does not misquote Vlad, 2007, but simply "interprets" it differently than Plaintiff.
15  According to Premier, this disagreement does not provide grounds to strike his opinions. Opp.
16  at 11-12.[10] As detailed in the opening memorandum, Grande relies on a mischaracterization of
17  Vlad that renders his opinions irrelevant, unreliable and prejudicial. Open. Mem. at 8-9.
18  Grande's opinion that Vlad "at most suggest[s] that disagreement has developed over time as
19  to whether glucosamine is effective" is a false and misleading statement. Grande Report at 19.
20  Grande does not dispute Vlad concluded glucosamine does not work.

21  **4.    The Clinical Treatment Protocols**

22  Premier argues that the consensus from clinical treatment guidelines, which themselves
23  are based on a review of the scientific studies, does not render Grande's opinions unreliable for
24  four reasons. Opp. at 12-13.

---

[10]  Premier's citations are inapposite and deal only with situations where the moving party simply disagreed with the opposing expert's opinions. Opp. at 12. *Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc.*, 2006 U.S. Dist. LEXIS 101952, at *30 (N.D. Cal. May 18, 2006) (there was "sufficient connection" between the expert opinion and market data – "the Court will not exclude expert testimony simply because Baxter disagrees with the results stated by Dr. Rubinfield"); *Ojeda-Sanchez v. Bland*, 2010 U.S. Dist. LEXIS 45333, at *10-11 (S.D. Ga. May 10, 2010) (denying motion to exclude where the expert's opinion was reliable).

1   First, Premier argues Joint Juice is advertised for "general joint health" and not arthritis or its symptoms, and therefore the guidelines from AAOS, OARSI, NICE and ACR are irrelevant. These marketing messages are very much at issue, a position well-supported by Premier's internal market research. *See* ECF No. 101-3 (Plaintiff's Opposition to Motion for Summary Judgment) at 2-5.

Second, Premier misleadingly argues the 2013 AAOS guidelines do not actually recommend against glucosamine – they merely state "we cannot recommend using glucosamine and chondroitin." Opp. at 13. AAOS, which reviewed twenty-one studies for its "strong" recommendation, concluded glucosamine and chondroitin have been extensively studied and lack efficacy:

> At this time, both glucosamine and chondroitin sulfate have been extensively studied. Despite the availability of the literature, there is essentially no evidence that minimum clinically important outcomes have been achieved compared to placebo, whether evaluated alone or in combination. The strength of the recommendation is based on lack of efficacy.

CC-Ex. 61 (AAOS, 2013) at 6-7.

Third, Premier argues "as Dr. Grande notes, other professional organizations have reached the opposite conclusion" of AAOS, OARSI, NICE and ACR. Opp. at 13 (citing Grande Report at 20-21). In fact, Dr. Grande notes just one organization – the American Academy of Nurse Practitioners. Dr. Willis demonstrates in his supplemental declaration how Grande's sole citation is false and misleading, including because the American Academy of Nurse Practitioners is not even affiliated with the paper Grande attributes to them. Open. Mem. Ex. 8 (Willis Suppl. Decl.) at ¶55.

Premier ultimately concludes "the conclusions of various professional organizations highlights the difference of opinions that exist as to the efficacy of glucosamine and chondroitin." Opp. at 13. There is no difference of opinion. Grande is alone on an island. The clinical treatment guidelines demonstrate again that his opinions are unreliable and misleading.

///

///

///

### III. CONCLUSION

For the reasons stated, Plaintiff respectfully requests the Court grant the motion to exclude Dr. Grande's reports and opinions.

Dated: December 21, 2015

BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
THOMAS J. O'REARDON II (247952)

By:   s/ Timothy G. Blood
         TIMOTHY G. BLOOD

701 B Street, Suite 1700
San Diego, California 92101
Telephone: (619) 338-1100
Facsimile: (619) 338-1101
tblood@bholaw.com
toreardon@bholaw.com

GRANT & EISENHOFER P.A.
ADAM J. LEVITT (*pro hac vice*)
EDMUND S. ARONOWITZ*
30 North LaSalle Street, Suite 1200
Chicago, Illinois 60602
Telephone: (312) 214-0000
Facsimile: (312) 214-0001
alevitt@gelaw.com
earonowitz@gelaw.com

SIPRUT PC
JOSEPH J. SIPRUT (*pro hac vice*)
17 N. State Street, Suite 1600
Chicago, Illinois 60602
Telephone: (312) 236-0000
Facsimile: (312) 948-9212
jsiprut@siprut.com
tzanders@siprut.com

CARPENTER LAW GROUP
TODD D. CARPENTER (234464)
402 West Broadway, 29th Floor
San Diego, California 92101
Telephone: (619) 347-3517
Facsimile: (619) 756-6991
todd@carpenterlawyers.com

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 21, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the Electronic Mail Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on December 21, 2015.

*s/ Timothy G. Blood*
TIMOTHY G. BLOOD

BLOOD HURST & O'REARDON, LLP
701 B Street, Suite 1700
San Diego, CA  92101
Telephone:  619/338-1100
619/338-1101 (fax)
tblood@bholaw.com