1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

VINCENT D. MULLINS, et al.,

        Plaintiffs,

   v.

PREMIER NUTRITION CORPORATION,

        Defendant.

Case No.  13-cv-01271-RS

**ORDER DENYING MOTION TO
EXPAND CLASS CERTIFICATION
BEYOND CALIFORNIA CONSUMERS**

## I.    INTRODUCTION

Plaintiff Kathie Sonner represents a class of California consumers who purchased Joint

Juice, a drinkable glucosamine hydrochloride and chondroitin sulfate supplement.  She has sought

to expand those classes to include members:  (1) who purchased Joint Juice in all fifty states or, in

the alternative, (2) who purchased the product in ten specific states.  Questions remained about

whether the nationwide or ten-state class could proceed where the claims are based on California

law, and therefore the parties were directed to file briefs addressing that issue.

The responses submitted by the parties exposed the material conflicts between California's

Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, and the Consumer Legal

Remedies Act ("CLRA"), Cal. Civ. Code § 1770, on the one hand, and the laws of other effected

states.  Premier demonstrated there are at least some states with laws that materially conflict with

the UCL and CLRA and, on balance, the interests of the states where the advertising occurred

outweigh those of California.  Sonner concedes the existence of true conflicts between the law of

some states and California law, thereby making a nationwide class improper.  Similarly, Premier

has demonstrated there are material conflicts between the laws of those ten states in the alternative sub-group, and that those states have more interest in applying their laws to the advertisements at issue than does California.

Sonner now offers a new proposal: to carve out those states whose laws materially conflict with the UCL or CLRA. The trouble, however, is that the material conflicts that Premier has identified conflict with the UCL, but not the CLRA, or vice versa. Sonner has not offered a proposal that resolves all conflicts cleanly. Nor has Premier had the opportunity to challenge Sonner's new proposal. Accordingly, because Sonner has not demonstrated that California law should apply to the two classes originally proposed, she will represent only a class of California consumers who have purchased Joint Juice since March 1, 2009. Her request to represent a larger class of consumers therefore must be denied.

## II.     PROCEDURAL HISTORY[1]

Plaintiff Kathie Sonner seeks to represent consumers in all fifty states, or, in the alternative, consumers in ten specific states in this class action premised on California consumer-protection statutes. Sonner satisfied her burden to prove that the consumer claims she advances are amenable to classwide adjudication and that common questions predominate. Accordingly, at a minimum, a class of California consumers who have purchased Joint Juice since March 1, 2009, was certified. Difficult questions remained, however, about whether, under California's government-interests test, California law could apply nationwide or to the proposed ten-state subclass in light of *Mazza v. American Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012). To assist with these issues, the parties submitted additional briefs addressing the following two questions:

(1) Does California's government-interests test require a categorical approach, where the existence of a scienter requirement, for example, always gives rise to a material conflict between the UCL and the CLRA and the consumer-protection laws of other states? Or

---

[1] An account of the factual basis underlying Sonner's claims appears in the order denying Premier's motion for summary judgment.

1    must Premier prove that this differing element is seriously in dispute in this case?

2    (2) Why do scienter and reliance elements and differing damages models make a difference in

3         this case in terms of the geographic scope of the putative class?  When answering this

4         question, the parties should examine the specific facts of this case.

### III.    LEGAL STANDARD

6         "A federal court sitting in diversity must look to the forum state's choice of law rules to

7    determine the controlling substantive law."  *Mazza*, 666 F.3d at 589 (internal quotation marks

8    omitted).  Thus, in this case, California's choice-of-law rules apply.  Application of California law

9    to class members from other jurisdictions is permissible only if Sonner shows "doing so comports

10   with both (1) due process, and (2) California's choice of law rules."  *In re Optical Disk Drive*

11   *Antitrust Litig.*, No. 3:10-MD-2143 RS, 2016 WL 467444, at *12 (N.D. Cal. Feb. 8, 2016) (citing

12   *Mazza*, 666 F.3d at 589).  Sonner has already demonstrated application of California law to

13   California-based Premier will not offend due process, and thus the only remaining question is

14   whether California's choice of law rules are satisfied here.  Premier bears the burden to show

15   "'foreign law, rather than California law, should apply to class claims.'"  *Mazza*, 666 F.3d at 590

16   (quoting *Wash. Mut. Bank, F.A. v. Superior Court*, 24 Cal. 4th 906, 921 (2001)).

17        There are typically three steps to decide which state's law applies.  The first task is to

18   determine whether the laws of the affected jurisdictions are "the same or different."  *Id.* at 590

19   (quoting *McCann v. Foster Wheeler LLC*, 48 Cal. 4th 68, 81-82 (2010)).  If the laws are different,

20   the second step requires an examination of "each jurisdiction's interest in the application of its

21   own law" to determine whether a true conflict exists.  *Id.*  If it does, then the final step involves

22   analyzing "which state's interest would be more impaired if its policy were subordinated to the

23   law of the other state."  *Id.*

### IV.    DISCUSSION

25   **A.  The Impact of *Mazza***

26        The language used by the *Mazza* court speaks broadly, suggesting nationwide consumer

27   class actions are never permissible because some states require proof of reliance or scienter, or

United States District Court
Northern District of California

United States District Court
Northern District of California

have different methods for compensating victims of consumer fraud. *See Mazza*, 666 F.3d at 592-93 ("Each of our states has an interest in balancing the range of products and prices offered to consumers with the legal protections afforded to them. Each of our states also has an interest in being able to assure individuals and commercial entities operating within its territory that applicable limitations on liability set forth in the jurisdiction's law will be available . . . ." (internal quotation marks omitted)). Yet, the court was careful to limit its holding to "the facts and circumstances of this case," *id.* at 594, and thus district courts routinely require fact- and case-specific analysis to determine whether to apply California law to absent class members in other jurisdictions. *See, e.g.*, *Forcellati v. Hyland's, Inc.*, 876 F. Supp. 2d 1155, 1160-61 (C.D. Cal. 2012) ("Defendants can only meet [their] burden by engaging in an analytically rigorous discussion of each prong of California's 'government interests' test based on the facts and circumstances of *this* case and *this* Plaintiff's allegations." (emphasis in original)); *In re Clorox Consumer Litig.*, 894 F. Supp. 2d 1224, 1237 (N.D. Cal. 2012) ("Since the parties have yet to develop a factual record, it is unclear whether applying different state consumer protection statutes could have a material impact on the viability of Plaintiffs' claims."); *Allen v. Hyland's Inc.*, 300 F.R.D. 643, 658 (C.D. Cal. 2014); *Bruno v. Eckhart Corp.*, 280 F.R.D. 540, 550 (C.D. Cal. 2012) ("Defendants cannot profitably rely on the work of a different party in a different case with different facts—or on the Ninth Circuit finding error in a district court rejecting an argument Defendants did not themselves present to this Court—to correct their failure" to show "the law of other states conflicted with California law *as applied to this particular case*." (emphasis in original)).

Premier correctly notes that when district courts have permitted nationwide class actions involving claims for violations of consumer protection laws, the defendants failed to offer any analysis of states' laws or case-specific discussion whatsoever. *See Allen*, 300 F.R.D. at 643; *Forcellati*, 2014 WL 1410264, at *3; *Bruno*, 280 F.R.D. at 549-50. Of course, defendants need do more than simply submit a table of state law to show the UCL and CLRA are inapplicable nationwide; they must demonstrate the elements at issue are actually in dispute and amount to true

1  conflicts.

2      This fact-specific approach comports with the California Supreme Court's decision to

3  abandon its prior categorical rule "that in tort actions the law of the place of the wrong was the

4  applicable law in a California forum regardless of the issues before the court." *Hurtado v.*

5  *Superior Court*, 11 Cal. 3d 574, 579 (1974).  Instead, the court chose to adopt the more flexible

6  government-interests test.  Thus, under that test, "[t]he fact that two states are involved does not

7  itself indicate there is a 'conflict of laws' or 'choice of law' problem.  There is obviously no

8  problem where the laws of the two states are identical." *Id.* at 580.  In other words, the analysis

9  begins by identifying whether the statutes are worded differently, and, if so, whether the

10  differences rise to the level of substantive requirements.  "The key step in this [choice of law]

11  process is delineating the issue to be decided." *Id.* at 584.

12      **B.  Nationwide Class**

13      Neither party seriously disputes the fact the consumer protection statutes of all fifty states

14  vary.  Instead, they clash about whether the conflicts identified—reliance, scienter, and

15  remedies—are true or false conflicts.  Sonner contends most of the conflicts identified are of no

16  consequence.  To some extent, her assessment is accurate.  She acknowledges, however, that at

17  least some conflicts cannot be reconciled, rendering inappropriate the application of California law

18  nationwide.

19      The issue of reliance, for example, makes a nationwide class difficult to maintain.  The

20  CLRA requires proof of "damage," Cal. Civ. Code § 1780(a), and thus named and unnamed

21  plaintiffs must prove the alleged deceptive conduct caused that damage. *In re Steroid Hormone*

22  *Prod. Cases*, 181 Cal. App. 4th 145, 156 (2010).  In the context of claims asserting alleged

23  misrepresentations, a showing that the alleged misrepresentation was material suffices to establish

24  damage. *Id.* at 156-57.  In contrast, the UCL requires class representatives to prove reliance as

25  part of the statute's standing requirement, but does not require absent class members to do so. *See*

26  *In re Tobacco II Cases*, 46 Cal. 4th 298, 324-26 (2009).  A plaintiff satisfies the burden of proving

27  reliance by showing the alleged "misrepresentation was an immediate cause of the injury-

28

United States District Court
Northern District of California

1    producing conduct"—not that it was the only cause—or that the misrepresentation was material.

2    *Id.* at 326-27.  When a misrepresentation is material, a presumption of reliance arises.  *Id.* at 327.

3    Sonner agrees that most states, like the CLRA, require proof of reliance.  Thus, most states' laws

4    materially conflict with the UCL.  Idaho and North Dakota, however, do not mandate such proof,

5    and therefore conflict with the CLRA, but not the UCL.

6          Sonner argues nonetheless that any conflict as to the level of proof of reliance is not

7    meaningful here as that element is not seriously in dispute.  To the contrary, on summary

8    judgment, she successfully demonstrated that a dispute of fact exists about whether Premier's

9    alleged misrepresentations were material (thereby giving rise to a presumption of reliance), and

10   whether consumers actually relied on the advertising.  Those questions are not beyond dispute,

11   and therefore a true conflict exists.

12         Scienter is also a stumbling block for Sonner's attempt to apply California law nationwide.

13   South Dakota and Pennsylvania would require a plaintiff to prove Premier intended to deceive

14   consumers.  *See Coleman v. Commonwealth Land Title Ins. Co.*, 684 F. Supp. 2d 595, 619 (E.D.

15   Pa. 2010) (citing *Weinberg v. Sun Co.,* 565 Pa. 612, 777 A.2d 442, 445–46 (2001); *Santana*

16   *Products, Inc. v. Bobrick Washroom Equip., Inc.*, 401 F.3d 123, 136 (3d Cir. 2005) ("To bring a

17   claim of fraud under the UTPCPL, Pennsylvania state court precedent requires Plaintiffs to meet

18   the elements of common law fraud. . . . Under Pennsylvania law, common law fraud requires: (1) a

19   misrepresentation, (2) material to the transaction, (3) made falsely, (4) with the intent of

20   misleading another to rely on it, (5) justifiable reliance resulted, and (6) injury was proximately

21   caused by the reliance."); S.D. Codified Laws § 20-10-1 ("One who willfully deceives another,

22   with intent to induce him to alter his position to his injury or risk, is liable for any damage which

23   he thereby suffers.").

24         Sonner's response to this conflict is to assert that Premier's intent to deceive consumers is

25   not seriously in dispute.  While the Ninth Circuit has not offered specific guidance about whether

26   a judge or jury resolves factual disputes necessary to choose which state law should apply, the

27   better practice would be for courts to resolve those factual disputes at the choice-of-law stage.  *See*

28

1    *generally In re Facebook Biometric Info. Privacy Litig.*, No. 15-CV-03747-JD, 2016 WL

2    2593853, at *2-4 (N.D. Cal. May 5, 2016).  Premier hotly contests that it and its employees

3    intended to deceive the public and has proffered evidence demonstrating how seriously that

4    question is in dispute.  Accordingly, it is not proper to conclude as a matter of law that Premier

5    intended to deceive consumers, and therefore the CLRA and ULC materially conflict with the

6    statutes of South Dakota and Pennsylvania.

7         In the face of these true conflicts, Sonner does not attempt to argue that California's

8    interest in the application of its law outweighs the other states' interests in the same.[2]  Instead, she

9    proposes carving out these four states from the class or proceeding with two different classes:  one

10   class that includes consumers in states whose laws do not conflict with the UCL, and a second

11   class of consumers from states whose statutes do not conflict with the CLRA.  There are two

12   problems with this proposal.  First, this approach requires clearly delineating which states have

13   material conflicts with the UCL and which have conflicts with the CLRA, and there are notable

14   differences between the UCL and the CLRA.  As the proponent of a nationwide (or 46-state) class,

15   Sonner bears the burden to demonstrate the solution she proposes is proper.  *Vinole v.*

16   *Countrywide Home Loans, Inc.*, 571 F.3d 935, 944 n.9 (9th Cir. 2009) ("The party seeking

17   certification bears the burden of demonstrating that he has met the requirements of Rule 23(b).").

18   She has not, in the end, persuasively demonstrated that the solution she proposes is workable or

19   would adequately resolve these conflicts.

20   _____

21   [2] For the sake of completeness, the government-interests test reveals application of California law
     nationwide would be inappropriate under the facts and circumstances of this case.  The next step
22   requires identifying the interests at stake and to determine which state's interests outweigh the
     others.  States take varying approaches on how to strike the right balance between consumer
23   protection and business protection.  *See Mazza*, 666 F.3d at 592.  California chose to put its thumb
     on the scale in favor of protecting consumers and accordingly opted to relax the standard for
24   proving reliance.  *See id.* ("California[] [has] potentially more comprehensive consumer protection
     laws . . . .").  *Mazza* instructs that the state where the advertising took place has the greater interest
25   in regulating the communications used to consummate a transaction and the reliance thereon.  *See*
     *id.* at 593-94.  Even the fact that the corporation creating the advertisements is located in
26   California and conducts business there is insufficient to overcome the interests of the state where
     the transaction occurred.  *See id.* at 594.  California's interest in the transaction is attenuated, and
27   therefore the law of the foreign states should apply.  *Id.*

28                                                  ORDER DENYING MOTION TO CERTIFY A NATIONWIDE CLASS
                                                    CASE NO.  13-cv-01271-RS

United States District Court
Northern District of California

1    Second, Premier has not had the opportunity to respond to this proposal.  At the outset,

2    Sonner offered three proposed class definitions:  nationwide, ten-state, or California.  Premier

3    responded to those three proposals with specific, targeted analysis.  To change the definitions of

4    the proposed class at the last minute would be unfair under these circumstances, when Premier has

5    already carried its burden to show that the government-interests test does not favor application of

6    California law nationwide or, as explained below, to the claims of consumers in the specific ten

7    states Sonner identifies.  Accordingly, a nationwide class will not be certified.

8        **C.  Ten-State Class**

9        Sonner's second proposal is to certify a class of consumers from the following ten states:

10   California, Florida, Illinois, Massachusetts, Michigan, Minnesota, Missouri, New Jersey, New

11   York, and Washington.  Again, the central dispute is whether the conflicts identified are real and

12   material.  As explained below, Premier has demonstrated the existence of material conflicts and

13   that each individual state's interest in the application of its laws outweighs California's interest in

14   applying its law to certain members among the proposed ten-state group.

15           1.  *Reliance*

16       Premier contends Minnesota's consumer protection statute conflicts with the UCL and the

17   CLRA because it (1) requires proof of reliance, and (2) demands an individualized examination of

18   evidence rebutting the presumption of reliance.  As explained above, the CLRA requires proof of

19   reliance, whereas the UCL does not require such proof for absent class members.  Clearly, the

20   Minnesota law materially conflicts with the UCL because it requires proof of reliance.  The more

21   difficult question is whether it conflicts with the CLRA.

22       Minnesota permits defendants to "negat[e] a plaintiff's direct or circumstantial showing of

23   causation and reliance."  *In re St. Jude Med., Inc.*, 522 F.3d 836, 840 (8th Cir. 2008).  The extent

24   to which Minnesota's statute actually differs from California law remains unclear.  At least one

25   federal district court has concluded the reliance requirements under California and Minnesota law

26   are similar.  *Khoday v. Symantec Corp.*, No. CIV. 11-180 JRT/TNL, 2014 WL 1281600, at *29-31

27   (D. Minn. Mar. 13, 2014) ("[S]imilar to California, Minnesota courts have found that class

28

members' awareness of misrepresentations provides a sufficient causal nexus between a violation of the consumer protection statutes and damages in the form of restitution.").  Indeed, class actions under the CLRA have failed where the evidence showed the defendant's message was not uniform, consumers received information about the product from myriad sources, and some consumers would use the product despite the risks.  *See In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 133-34 (2009).

All in all, doubts remain about whether Premier has identified a true conflict.  In this circumstance, one of the guiding principles of federalism breaks the tie:  "each State may make its own reasoned judgment about what conduct is permitted or proscribed within its borders."  *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 422 (2003).  Thus, each state must decide for itself how to resolve these unanswered questions about the scope and evidentiary requirements needed to establish reliance.  Until state courts clarify otherwise, this potential difference between the Minnesota and California statutes presumably is material.  As discussed above, Minnesota's interest in regulating transactions occurring within its borders outweighs California's interest in the same.  Given the fact that California's interest in transactions in Minnesota is attenuated, the law of Minnesota should apply.  *See Mazza*, 666 F.3d at 594.

### 2.  *Scienter*

In *Mazza*, the Ninth Circuit observed, "[i]n cases where a defendant acted without scienter, a scienter requirement will spell the difference between the success and failure of a claim."  666 F.3d at 591.  Premier asserts numerous states require proof of scienter that materially differs from those at issue under the CLRA.  In particular, Premier contends the following states included in Sonner's proposed ten-state class require proof of various types of scienter:  Michigan (intent to deceive) and Illinois and Minnesota (intent to induce reliance).

Sonner has shown that scienter is not an impediment to proceeding with a class of consumers from the ten states she has identified under the CLRA, which offers numerous ways to prove an unfair business practice some of which have a scienter requirement in place, such as "intent not to sell [goods] as advertised."  Cal. Civ. Code § 1770(a)(9).  This intent requirement

aligns with the intent requirements of Michigan. *Compare* Mich. Comp. Laws Ann. §

445.903(1)(e) ("Representing that goods or services are of a particular standard, quality, or grade .

. . if they are not"), *with* Cal. Civ. Code § 1770(a)(7) ("Representing that goods . . . are of a

particular standard, quality, or grade . . . if they are not."); *see also Brownlow v. McCall Enters.,*

*Inc.*, No. 325843, 2016 WL 1576919 (Mich. Ct. App. Apr. 19, 2016) (rejecting the contention that

plaintiffs had to prove the defendant had actual knowledge of the misrepresentation or reckless

disregard for the truth when asserting goods were advertised as having qualities they did not).

The trouble for Sonner is that, in contrast to the CLRA, "[t]he UCL does not impose a

scienter requirement." *Lazebnik v. Apple, Inc.*, No. 5:13-CV-04145-EJD, 2014 WL 4275008, at

\*7 (N.D. Cal. Aug. 29, 2014); *see also Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal. 4th

163, 181 (2000) ("[A] plaintiff need not show that a UCL defendant intended to injure anyone

through its unfair or unlawful conduct."). The fact Illinois, Michigan, and Minnesota impose any

intent requirement at all therefore renders Michigan's law materially in conflict with the UCL. As

explained above, California's interest in the application of its law to transactions occurring in

Michigan is attenuated, and therefore Michigan's law should govern these potential claims.

### 3. *Remedies Available*

The remedies the CLRA and UCL offer vary considerably. The UCL offers limited

remedies—restitution and injunctive relief. *In re Vioxx* Cases, 180 Cal. App. 4th 116, 131-32

(2009), whereas the CLRA offers plaintiffs a chance to obtain actual and punitive damages,

restitution, injunctive relief, and mandatory attorney fees for a prevailing plaintiff. Cal. Civ. Code

§§ 1780(a), (e). Premier has identified differences in the way all fifty states have chosen to

compensate victims of misleading advertising. Some states, like California, award punitive

damages, while some do not. Other states agree with the policies underlying awards of punitive

damages, but choose instead to authorize treble damages. Moreover, some states take different

approaches to the calculation of actual damages. All of these differences, Premier argues, are

material and preclude application of California law to the proposed ten-state group. Sonner lumps

the two statutes together without differentiating the two, an unsatisfactory approach—particularly

United States District Court
Northern District of California

1   in light of the variations between remedies offered under the ten state statutes.

2           a.  <u>Punitive Damages</u>

3          Premier points out that Florida and Michigan do not affirmatively permit plaintiffs to

4   recover punitive damages; each of these states remains silent on the issue. *See* Fla. Stat. Ann. §

5   501.211(2); Mich. Comp. Laws Ann. § 445.911; Minn. Stat. §8:31(3a).  State and federal courts

6   interpreting these statutes have read this silence to mean punitive damages are unavailable under

7   these statutes. *Nowicki-Hockey v. Bank of Am., N.A.*, 593 F. App'x 420, 421 (6th Cir. 2014)

8   ("[W]e note that the MCPA lacks express language permitting exemplary damages. . . . The

9   absence of such language in the authorizing statute—or clear legislative intent—precludes an

10   award of exemplary damages under Michigan law." (citation omitted)); *LaFerney v. Scott Smith*

11   *Oldsmobile, Inc.*, 410 So. 2d 534, 535-36 (Fla. Dist. Ct. App. 1982) ("[T]he court reversed an

12   attorney fee award under [Fla. Stat. Ann. §] 501.2105 because it included time spent on a punitive

13   damage claim, which is outside the scope of Chapter 501."); *In re Lutheran Bhd. Variable Ins.*

14   *Prods. Co. Sales Practices Litig.*, No. 99-MD-1309(PAM/JGL), 2004 WL 909741, at *7 (D.

15   Minn. Apr. 28, 2004) ("Because the statute that gives rise to Plaintiffs' cause of action contains no

16   authorization for punitive damages, the Court finds that punitive damages are not available in

17   actions based on the CFA.").

18          Sonner apparently concedes the statutes that do not permit punitive-damages awards

19   materially conflict with the CLRA, but insists California's interests outweigh those of Florida,

20   Michigan, and Minnesota.  To support this contention, she relies on the fact California believes

21   strongly in awarding punitive damages for violations of the CLRA as a mechanism to remedy a

22   public wrong.  Indeed, at least one district court concluded "punitive damages are . . . a

23   'fundamental' part of the [CLRA's] statutory scheme." *Walter v. Hughes Commc'ns, Inc.*, 682 F.

24   Supp. 2d 1031, 1041 (N.D. Cal. 2010).  In contrast, Sonner contends, the legislatures of Florida,

25   Michigan, and Minnesota are agnostic about the value of punitive damages, which she views as

26   tantamount to indifference.

27          "Punitive damages may properly be imposed to further a State's legitimate interests in

28

United States District Court
Northern District of California

ORDER DENYING MOTION TO CERTIFY A NATIONWIDE CLASS
CASE NO. 13-cv-01271-RS

1    punishing unlawful conduct and deterring its repetition." *BMW of N. Am., Inc. v. Gore*, 517 U.S.

2    559, 568 (1996).  Our federal system allows states to reach different conclusions about whether to

3    authorize punitive damages and when to permit awards of such damages.  *See id.* at 568-72

4    (describing the various consumer protection statutes as "a patchwork of rules representing the

5    diverse policy judgments of lawmakers in 50 States.").  The silence of Florida, Michigan, and

6    Minnesota should not be taken as an expression of indifference.  In many respects, their silence

7    speaks volumes:  they have chosen not to adopt California's preferred mechanism for protecting

8    consumers.  States need not affirmatively state they decline to expose business to the threat of

9    punitive damages for it to be so.  Moreover, states may choose to limit corporations' liability in an

10   effort to "attract[] foreign businesses, with resulting increase in commerce and jobs" by limiting

11   liability and punishment.  *Mazza*, 666 F.3d at 592.  Thus, the interests of those states that choose

12   not to permit punitive damages overshadow California's separate interest.

13              b.   Treble Damages

14         Premier further notes Massachusetts and Washington have chosen to make available treble

15   damages instead of punitive damages in the appropriate circumstances.[3]  New Jersey has chosen to

16   make treble-damages awards mandatory.  *See* N.J. Stat. Ann. § 56:8-19.  Sonner suggests there is

17   no true conflict between punitive damages in cases of oppression,[4] fraud, or malice,[5] *Trammell v.*

18   *W. Union Tel. Co.*, 57 Cal. App. 3d 538, 557 (1976), and treble damages for willful or knowing

19   violations because both systems are designed to punish more culpable actors and to deter future

20

21   [3] Premier argues New York permits treble damages; however, no such remedy is available when a
     plaintiff brings class claims.  *Alicea v. Circuit City Stores, Inc.*, No. 07 CIV. 6123DC, 2008 WL

22   170388, at *1 (S.D.N.Y. Jan. 22, 2008) ("[B]ecause Alicea is bringing a class claim under N.Y.
     GBL § 349(h), N.Y. Civil Procedure Law & Rules . . . 901(b) precludes Alicea from seeking

23   treble damages." (citing N.Y. C.P.L.R. § 901(b) (McKinney 2006)).

24   [4] California defines "oppression" as "subjecting a person to cruel and unjust hardship in conscious
     disregard of his rights."  *Trammell*, 57 Cal. App. 3d at 557.

25
     [5] "Malice" is "a motive and willingness to vex, harass, annoy or injure."  *Trammell*, 57 Cal. App.
26   3d at 557.  Plaintiffs may prove a defendant acted with malice by showing "the defendant's
     wrongful conduct was willful, intentional, and done in reckless disregard of its possible results."
27   *Id.* (internal quotation marks omitted).

28                                              ORDER DENYING MOTION TO CERTIFY A NATIONWIDE CLASS
                                                CASE NO.  13-cv-01271-RS

United States District Court
Northern District of California

1    misconduct, *see Kraft Power Corp. v. Merrill*, 981 N.E.2d 671, 685-86 (Mass. 2013) ("Like

2    punitive damages in tort actions, multiple damages . . . can no longer achieve the goals of

3    punishing a defendant or deterring him from future misconduct when the wrongdoer has died . . .

4    .").

5         Despite some similarities, treble damages differ from punitive damages in one significant

6    way:  there is a set maximum amount a plaintiff may receive.  In Washington, for example, the

7    Consumer Protection Act caps treble damages at $25,000.  Wash. Rev. Code §19.86.090.

8    Washington's decision to limit treble damages reflects a policy decision to limit the risk of

9    advertising and selling in an effort to encourage businesses to offer products within its borders.

10   Thus, as in *Mazza*, application of California's law would impair the policy preferences of the

11   states where the advertising occurred.  *See* 666 F.3d at 594 (concluding the state where the

12   communication of advertisements took place have an interest in the application of their laws to

13   transactions between their citizens and businesses operating in the state).  Here, that would mean

14   the interests of Massachusetts, New Jersey, and Washington outweigh those of California.[6]

15              c.   Actual Damages vs. Restitution[7]

16        The final material differences at issue concern restitution and actual damages and the

17   different approaches to calculating actual damages.  The UCL permits plaintiffs to recover only

18   restitution—the "difference between what was paid and what a reasonable consumer would have

19   paid at the time of purchase without the fraudulent or omitted information."  *Pulaski &*

21   ───────────────
     [6] Sonner contends these conflicts can be resolved by awarding the New Jersey plaintiffs automatic
22   treble damages if she prevails at trial.  While that solution may be responsive on the issue of
     predominance for class certification, it is not helpful to the choice-of-law analysis required here.

23
     [7] Some states choose to include emotional or mental distress damages under the umbrella of
24   "actual damages" in appropriate circumstances.  *See Lozada v. Dale Baker Oldsmobile, Inc.*, 136
     F. Supp. 2d 719, 728 (W.D. Mich. 2001) ("Michigan law permits the recovery of mental distress
25   damages in cases under the MCPA when those damages are the legal and natural consequences of
     the wrongful act and might reasonably have been anticipated." (internal quotation marks omitted)).
26   Sonner excludes claims for personal injury or emotional distress damages, and therefore there is
     no material conflict with the law of Michigan or of any other state that would permit such claims.
27

28                                            ORDER DENYING MOTION TO CERTIFY A NATIONWIDE CLASS
                                              CASE NO.  13-cv-01271-RS

United States District Court
Northern District of California

1    *Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 989 (9th Cir. 2015).[8]  In contrast, Washington

2    does not; it awards only actual damages under their consumer protection laws.  *See Paris v.*

3    *Steinberg & Steinberg*, 828 F. Supp. 2d 1212, 1217 (W.D. Wash. 2011) (restitution is permitted

4    only in actions the attorney general initiates) (citing Wash. Rev. Code § 19.86.080; *State v. Ralph*

5    *Williams' N. W. Chrysler Plymouth, Inc.*, 510 P.2d 233, 241-42 (Wash. 1973)).

6            Washington's preference for actual damages creates a conflict with the UCL, but not the

7    CLRA, which permits recovery of actual damages.  In her motion for class certification, however,

8    Sonner focused on whether restitution could be determined on a classwide basis and did not offer

9    argument or evidence with respect to actual damages.  Accordingly, there is no basis to conclude

10   she seeks actual damages under the CLRA, and the conflict remains.[9]

11           In sum, Premier has carried its burden to show that California's interest in applying its law

12   to the consumers in the specific ten states is weak.  Sonner's proposed ten-state class is therefore

13   not appropriate under the facts and circumstances of this case.

14

15

16   [8] Contrary to Premier's assertion, the rule for calculating restitution articulated in *Pulaski* was the
     standard applied in this case.  Sonner may prove consumers would not have paid any money if the

17   Joint Juice package did not advertise the purported joint health benefits of glucosamine and
     chondroitin.

18
     [9] Whether California calculates "actual damages" differently from other states remains unclear.

19   The CLRA does not define "actual damages," but "in the context of common law fraud, California
     courts have defined [the term] to mean 'those which compensate someone for the harm from

20   which he or she has been proven to currently suffer or from which the evidence shows he or she is
     certain to suffer in the future.'" *Chamberlan v. Ford Motor Co.*, 369 F. Supp. 2d 1138, 1146 (N.D.

21   Cal. 2005) (quoting *Saunders v. Taylor*, 42 Cal. App. 4th 1538, 1543 (1996)).  Some states—
     Illinois and Florida, for example—calculate damages using the "benefit of the bargain" model:

22   the difference between the market value of the product received and the value of the product if it
     performs as advertised.  *See Guido v. L'Oreal, USA, Inc.*, No. CV 11-1067 CAS JCX, 2013 WL

23   3353857, at *14 (C.D. Cal. July 1, 2013) (describing how to calculate the benefit of the bargain);
     *Baptist Hosp., Inc. v. Baker*, 84 So. 3d 1200, 1204 (Fla. Dist. Ct. App. 2012) (noting that under the

24   FDUTPA plaintiffs must prove "actual damages" defined as "the difference in the market value of
     the product or service in the condition in which it was delivered and its market value in the

25   condition in which it should have been delivered according to the contract of the parties."); *Frye v.*
     *L'Oreal USA, Inc.*, 583 F. Supp. 2d 954, 957 (N.D. Ill. 2008) (stating that Illinois's consumer

26   protection law entitles a plaintiff  "to be placed in the same financial position she would have been
     absent the misrepresentation.").  Neither party has offered any argument about whether these

27   methods conflict, and therefore there is no need to address that point now.

28
                                                    ORDER DENYING MOTION TO CERTIFY A NATIONWIDE CLASS
                                                    CASE NO.  13-cv-01271-RS

United States District Court
Northern District of California

## IV.     CONCLUSION

The facts and circumstances presented in this case compel the conclusion that neither a nationwide class nor a ten-state class is appropriate.  Accordingly, the class will remain limited to California consumers.

**IT IS SO ORDERED**.


Dated:  June 20, 2016

RICHARD SEEBORG
United States District Judge