**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| KATHLEEN SONNER, on behalf of herself and all others similarly situated,<br><br>*Plaintiff-Appellant*,<br><br>v.<br><br>PREMIER NUTRITION CORPORATION, FKA Joint Juice, Inc.,<br><br>*Defendant-Appellee.* | No. 18-15890<br><br>D.C. No.<br>3:13-cv-01271-RS<br><br>ORDER AND AMENDED OPINION |

Appeal from the United States District Court
for the Northern District of California
Richard Seeborg, District Judge, Presiding

Argued and Submitted December 3, 2019
San Francisco, California

Filed June 17, 2020
Amended August 20, 2020

Before:  Carlos F. Lucero,[*] Consuelo M. Callahan,
and Bridget S. Bade, Circuit Judges.

Order;
Opinion by Judge Bade

---

[*] The Honorable Carlos F. Lucero, United States Circuit Judge for the U.S. Court of Appeals for the Tenth Circuit, sitting by designation.

2          SONNER v. PREMIER NUTRITION CORP.

## SUMMARY[**]

### Restitution

The panel issued (a) an order amending its opinion filed on June 17, 2020, denying the petition for rehearing, and denying on behalf of the court the petition for rehearing en banc; and (b) an amended opinion affirming on different grounds the district court's dismissal of plaintiff's claims for restitution where plaintiff failed to demonstrate that she lacked an adequate legal remedy.

Plaintiff brought a diversity action and sought $32 million on behalf of a class of consumers, but as equitable restitution rather than as damages. The district court applied its interpretation of California law and dismissed plaintiff's claims for restitution because there was an adequate remedy at law, i.e., damages, available.

The panel held, as a threshold jurisdictional issue, that pursuant to *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), and *Guaranty Trust Co. of New York v. York*, 326 U.S. 99 (1945), federal courts must apply equitable principles derived from federal common law to claims for equitable restitution under California's Unfair Competition Law and Consumers Legal Remedies Act ("CLRA"). The panel held that state law cannot circumscribe a federal court's equitable powers even when state law affords the rule of decision.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel held that the district court did not abuse its discretion in denying plaintiff leave to amend her complaint for a third time to reallege the CLRA damages claim.

## COUNSEL

Leslie E. Hurst (argued), Timothy G. Blood, Thomas J. O'Reardon II, and Paula R. Brown, Blood Hurst & O'Reardon LLP, San Diego, California; Todd D. Carpenter, Carlson Lynch LLP, San Diego, California; Craig M. Peters, Altair Law, San Francisco, California; for Plaintiff-Appellant.

Jessica Grant (argued), Angel A. Garganta, and Brian A. Featherstun, Venable LLP, San Francisco, California, for Defendant-Appellee.

David M. Arbogast, Arbogast Law, La Jolla, California; Steven M. Bronson, The Bronson Firm APC, la Jolla, California; for Amicus Curiae Consumer Attorneys of California.

Xavier Becerra, Attorney General; Nicklas A. Akers, Senior Assistant Attorney General; Michele Van Gelderen, Supervising Deputy Attorney General; Samuel Harbourt, Deputy Solicitor General; Michael Reynolds, Deputy Attorney General; Office of the Attorney General, Los Angeles, California; for Amicus Curiae State of California.

Jordan Elias and Trevor T. Tan, Girard Sharp LLP, San Francisco, California, for Amicus Curiae Public Justice.

## ORDER

The opinion filed on June 17, 2020, and published at 962 F.3d 1072, is amended by the opinion filed concurrently with this order.

With these amendments, Judges Lucero, Callahan, and Bade vote to deny the petition for rehearing.  Judges Callahan and Bade vote to deny the petition for rehearing en banc.  The full court has been advised of the petition for rehearing en banc and no judge has requested a vote on whether to rehear the matter en banc.  Fed. R. App. P. 35. Accordingly, Appellant's petition for rehearing or rehearing en banc is **DENIED**.   No further petitions for panel rehearing or rehearing en banc may be filed.

## OPINION

BADE, Circuit Judge:

On the brink of trial after more than four years of litigation, Plaintiff-Appellant Kathleen Sonner voluntarily dismissed her sole state law damages claim and chose to proceed with only state law equitable claims for restitution and injunctive relief.  A singular and strategic purpose drove this maneuver:  to try the class action as a bench trial rather than to a jury.  Indeed, Sonner continued to seek $32,000,000 on behalf of the consumers she represented, but as equitable restitution rather than damages.  But, to Sonner's dismay, the plan backfired when, relying on its interpretation of California law, the district court dismissed her claims for restitution because an adequate remedy at law, i.e., damages, was available.

Pursuant to *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), and *Guaranty Trust Co. of New York v. York*, 326 U.S. 99 (1945), we hold that federal courts must apply equitable principles derived from federal common law to claims for equitable restitution under California's Unfair Competition Law ("UCL") and Consumers Legal Remedies Act ("CLRA").

I

In March 2013, Vincent Mullins filed a putative class action regarding "Joint Juice," a nutritional product manufactured, marketed, and sold by Defendant-Appellee Premier Nutrition Corporation ("Premier"). After substituting as the proposed class representative and named plaintiff, Sonner amended the complaint in September 2014. In April 2016, the district court certified a class of all California consumers who had purchased Joint Juice since March 1, 2009.

The basis for the lawsuit is false advertising. In its marketing materials, Premier touts Joint Juice as a dietary supplement beverage that supports and nourishes cartilage, lubricates joints, and improves joint comfort.[1] But, according to Sonner, Joint Juice fails to provide its advertised health benefits.

As originally pleaded, the complaint demanded injunctive relief under the UCL and CLRA, restitution under the UCL and CLRA, and damages under an Illinois consumer protection statute. In the first amended complaint, Sonner dropped her claim under Illinois law and amended

---

[1] We treat all factual allegations in the operative complaint as true. *See Dougherty v. City of Covina*, 654 F.3d 892, 897 (9th Cir. 2011).

the CLRA claim to seek damages because Premier failed to correct the alleged CLRA violations pursuant to California Civil Code § 1782.  Both complaints demanded a jury trial.

For years, the litigation proceeded in the typical fashion. Both sides took discovery, engaged in motion practice, and prepared for the looming jury trial.  But less than two months before trial was scheduled to begin, and after defeating Premier's summary judgment efforts, Sonner sought leave to file a second amended complaint to drop the CLRA damages claim.  This strategy raises an obvious question: why would Sonner voluntarily abandon an ostensibly viable claim on the eve of trial after more than four years of litigation?  The answer is also obvious:  to request that the district court judge award the class $32,000,000 as restitution, rather than having to persuade a jury to award this amount as damages.

Premier opposed the motion for leave.  Citing futility, Premier urged that Sonner's proposed second amended complaint would require dismissal of the restitution claims pursuant to California's inadequate-remedy-at-law doctrine. Without the CLRA damages claim, Premier argued, the proposed complaint failed to state viable claims for restitution because an adequate legal remedy—damages— was available for that injury.

During oral argument on the motion, the district court warned Sonner that if it granted the motion and she dropped the damages claim, "we are never going to hear again anything about a damage claim under the CLRA" and not to "put a lot of money" on a future motion to amend to re-allege the claim.  The district court also explained that it would be "open season" on a motion to dismiss and that Sonner was taking a "chance" by dropping the damages claim.

The district court ultimately granted Sonner leave to amend and vacated the jury trial.  Undeterred by Premier's arguments and the district court's warning, Sonner filed her second amended complaint in August 2017, dropping the CLRA damages claim.  And, true to its word, Premier moved to dismiss the restitution claims pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that Sonner needed to—but could not—establish that she lacked an adequate legal remedy as required by both federal equitable principles and California law.

After full briefing and oral argument, the district court granted Premier's motion to dismiss.  Applying its interpretation of California law, the district court held that Sonner could not proceed on her equitable claims for restitution in lieu of a claim for damages.  Specifically, the district court concluded that claims brought under the UCL and CLRA remained subject to California's inadequate-remedy-at-law doctrine, and that Sonner failed to establish that she lacked an adequate legal remedy for the same past harm for which she sought equitable restitution.  The district court also denied Sonner's request to amend her complaint to reallege the CLRA damages claim.  During oral argument on the motion, the district court explained that allowing Sonner to reassert the intentionally dropped claim under the circumstances would reflect "total prejudice to the court system," would be "unfair" and "prejudicial" to Premier, and would constitute an "abuse of the court system."  After the district court entered judgment, Sonner timely appealed the order dismissing her claims for equitable restitution to this court.

We review the district court's decision to grant a motion to dismiss under Rule 12(b)(6) de novo, *Fayer v. Vaughn*, 649 F.3d 1061, 1063–64 (9th Cir. 2011) (per curiam), and to

deny a request for leave to amend for abuse of discretion, *DCD Progs., Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987). We may affirm the district court's dismissal of the complaint on any basis supported by the record. *See Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008).

## II

Although not the basis for the district court's decision, we must first resolve a threshold jurisdictional question: do federal equitable principles independently apply to Sonner's equitable claims for restitution or must we, as a federal court, follow only the state law authorizing that equitable remedy?

Sonner argues that because her UCL and CLRA claims arise under California law and our jurisdiction rests in diversity, state law alone decides whether she must show a lack of an adequate legal remedy before obtaining restitution under those statutes. And, according to Sonner, the California legislature abrogated the state's inadequate-remedy-at-law doctrine for claims seeking equitable restitution under the UCL and CLRA.[2]

In contrast, Premier argues that federal courts in diversity are bound by traditional federal equitable

---

[2] Sonner does not dispute that the restitution she seeks under the UCL and CLRA is restitution in equity, not restitution at law. *See Great–W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 214 (2002) (drawing a "fine distinction between restitution at law and restitution in equity"). And California courts have held that "the UCL provides only for equitable remedies." *See Hodge v. Superior Court*, 51 Cal. Rptr. 3d 519, 523 (Ct. App. 2006); *see also Nationwide Biweekly Admin., Inc. v. Superior Court*, No. S250047, 2020 WL 2107914, at *1 (Cal. 2020) (concluding that the "causes of action established by the UCL" are "equitable in nature").

principles, including the requirement that the party pursuing equitable relief establish that it lacks an adequate legal remedy. Premier also contends that equitable claims for restitution under the UCL and CLRA remain subject to California's inadequate-remedy-at-law doctrine.

## A

It has long been the province of federal courts sitting in equity to apply a body of federal common law irrespective of state law. *See Russell v. Southard*, 53 U.S. (12 How.) 139, 147 (1851). Under the doctrine first prescribed in *Erie*, however, federal courts exercising diversity jurisdiction must follow state substantive law and federal procedural law when adjudicating state law claims. *See Hanna v. Plumer*, 380 U.S. 460, 465 (1965). To carry out the thorny task of identifying whether a law is substantive or procedural, we generally use an "outcome-determination test," which asks whether applying federal law instead of state law would "significantly affect" the litigation's outcome. *See Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996) (quoting *York*, 326 U.S. at 109). Thus, the outcome of a case in federal court should generally be "substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a State court." *York*, 326 U.S. at 109.

But when deciding between state and federal law, we do not rely on a rote litmus test. *See Hanna*, 380 U.S. at 467. Rather, we must be cognizant of *Erie*'s dual aims: "discouragement of forum-shopping and avoidance of inequitable administration of the laws." *Gasperini*, 518 U.S. at 428 (quoting *Hanna*, 380 U.S. at 468); *see also Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508–09 (2001). And we should also consider the policies underpinning the applicable state and federal laws. *See Byrd*

*v. Blue Ridge Rural Elec. Coop., Inc.*, 356 U.S. 525, 537–38 (1958).

B

As a result of *Erie*, the scope and application of federal common law narrowed considerably. *See Tex. Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 641 (1981) (noting that "absent some congressional authorization . . . federal common law exists only in . . . narrow areas"). Nevertheless, since *Erie*, the Supreme Court has instructed that a federal court's equitable authority remains cabined to the traditional powers exercised by English courts of equity, even for claims arising under state law. *See York*, 326 U.S. at 104–07.

In *York*, the Court addressed whether a state's statute of limitations could be asserted as a defense to an equitable claim arising under state law. *See id.* at 100–01, 107. When summarizing the applicability of *Erie*, the Court made clear that Congress provided that the forms and modes of proceeding in suits of equity should conform to the historic uses of courts of equity. *See id.* at 104–05. Writing for the Court, Justice Frankfurter explained:

> In giving federal courts cognizance of equity suits in cases of diversity jurisdiction, Congress never gave, nor did the federal courts ever claim, the power to deny substantive rights created by State law or to create substantive rights denied by State law.
>
> *This does not mean that whatever equitable remedy is available in a State court must be available in a diversity suit in a federal court*, or conversely, that a federal

court may not afford an equitable remedy not available in a State court. *Equitable relief in a federal court is of course subject to restrictions*: the suit must be within the traditional scope of equity as historically evolved in the English Court of Chancery; *a plain, adequate and complete remedy at law must be wanting*; explicit Congressional curtailment of equity powers must be respected; [and] the constitutional right to trial by jury cannot be evaded. *That a State may authorize its courts to give equitable relief unhampered by any or all such restrictions cannot remove these fetters from the federal courts*.

*Id.* at 105–06 (internal quotation marks and citations omitted) (emphases added). The Court further instructed that "State law cannot define the remedies which a federal court must give simply because a federal court in diversity jurisdiction is available as an alternative tribunal to the State's courts." *Id.* at 106; *see also Pusey & Jones Co. v. Hanssen*, 261 U.S. 491, 497–98 (1923) ("That a remedial right to proceed in a federal court sitting in equity cannot be enlarged by a state statute is likewise clear. . . . The federal court may therefore be obliged to deny an equitable remedy which the plaintiff might have secured in state court.").

The Court also explained that "[t]he source of substantive rights enforced by a federal court under diversity jurisdiction . . . is the law of the States." *York*, 326 U.S. at 112. Federal courts must therefore enforce "State-created substantive rights if the mode of proceeding and remedy [are] consonant with the traditional body of equitable remedies, practice and procedure." *Id.* at 106.

C

In accordance with *York*, we hold that a federal court must apply traditional equitable principles before awarding restitution under the UCL and CLRA. It has been a fundamental principle for well over a century that state law cannot expand or limit a federal court's equitable authority. *See Payne v. Hook*, 74 U.S. (7 Wall.) 425, 430 (1868) ("The equity jurisdiction conferred on the Federal courts is the same that the High Court of Chancery in England possesses; is subject to neither limitation or restraint by State legislation, and is uniform throughout the different States of the Union."). *Erie* intervened in 1938, of course, and the merger of law and equity followed soon after. But in seventy-five years, the Supreme Court has never repudiated its statements in *York*—offered seven years after *Erie*—that state law can neither broaden nor restrain a federal court's power to issue equitable relief.[3]

---

[3] We recognize that the statute *York* cited to support the principle that a "plain, adequate and complete remedy at law must be wanting," 326 U.S. at 105, was repealed in 1948 after the merger of law and equity, *see* 28 U.S.C. § 384 (repealed 1948). That merger does not, however, affect the validity of the principle. *See, e.g., Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 322 (1999) ("Notwithstanding the fusion of law and equity by the Rules of Civil Procedure, the substantive principles of Courts of Chancery remain unaffected." (quoting *Stainback v. Mo Hock Ke Lok Po*, 336 U.S. 368, 382 n.26 (1949))); *Oneida Indian Nation of N.Y. State v. Cty. of Oneida*, 464 F.2d 916, 922 (2d Cir. 1972) ("While [*York*] relied on § 16 of the Judiciary Act of 1789 (later Rev. Stat. § 723 and 28 U.S.C. § 384 (1940 ed.)), which limited suits in equity to cases in which there was no 'plain, adequate and complete remedy' at law, and that statute was repealed in 1948 as obsolete in view of the merger of law and equity under the Federal Rules of Civil Procedure, 62 Stat. 992, the principle remains intact."), *rev'd on other grounds*, 414 U.S. 661 (1974).

To be sure, *York* suggests that the "outcome" of a lawsuit should be "substantially the same" regardless of whether it is filed in state or federal court, 326 U.S. at 109, and applying federal equitable principles may lead to a different result if, as Sonner contends, California abrogated its inadequate-remedy-at-law requirement for claims brought under the UCL and CLRA. But the Supreme Court clearly foresaw the possibility of this sort of inconsistency in *York* and concluded that federal courts must nonetheless apply principles of federal common law. *See id.* at 105–06. According to the Court, even if a state authorizes its courts to provide equitable relief when an adequate legal remedy exists, such relief may be unavailable in federal court because equitable remedies are subject to traditional equitable principles unaffected by state law. *See id.* at 105–06 & n.3.[4] Since *York*, the Court has never held or suggested that state law can expand a federal court's equitable powers, even if allowing such expansion would ensure a similar outcome between state and federal tribunals.

Additionally, the "outcome" of this litigation is not our "only consideration" as we must also balance the policies

---

[4] Sonner characterizes the Court's statements in *York* regarding equitable remedies as dicta, and some courts have endorsed that view. *See New Mexico ex rel. Balderas v. Real Estate Law Ctr., P.C.*, 401 F. Supp. 3d 1229, 1349 n.93 (D.N.M. 2019); *Bangor Baptist Church v. State of Me., Dep't of Educ. & Cultural Servs.*, 576 F. Supp. 1299, 1314 & n.21 (D. Me. 1983). Even if we construe these statements as dicta, we must "afford [them] a weight that is greater than ordinary judicial dicta as prophecy of what the [C]ourt might hold." *Nettles v. Grounds*, 830 F.3d 922, 930-31 (9th Cir. 2016) (en banc) (quoting *Managed Pharmacy Care v. Sebelius*, 716 F.3d 1235, 1246 (9th Cir. 2013)). And "[a]s a lower federal court, we are advised to follow the Supreme Court's considered dicta." *Lemoge v. United States*, 587 F.3d 1188, 1193 (9th Cir. 2009) (quoting *Fernandez-Ruiz v. Gonzales*, 466 F.3d 1121, 1129 (9th Cir. 2006) (en banc)).

14        SONNER V. PREMIER NUTRITION CORP.

underlying the state and federal laws. *See Byrd*, 356 U.S. at 537–38. Here, as in *Byrd*, the principle precluding courts from awarding equitable relief when an adequate legal remedy exists implicates the well-established federal policy of safeguarding the constitutional right to a trial by jury in federal court. *See id.* at 537–39 (state rules should not abridge a constitutional right to a jury trial in federal court); *see also Scott v. Neely*, 140 U.S. 106, 110 (1891) ("[W]henever, respecting any right violated, a court of law is competent to render a judgment affording a plain, adequate, and complete remedy, the party aggrieved must seek his remedy in such court . . . because the defendant has a constitutional right to a trial by jury . . . ."). Even assuming California decided as a matter of policy to streamline UCL and CLRA claims by abrogating the state's inadequate-remedy-at-law doctrine, the strong federal policy protecting the constitutional right to a trial by jury outweighs that procedural interest.

Sonner cites our decision in *Sims Snowboards, Inc. v. Kelly*, 863 F.2d 643 (9th Cir. 1988), to argue that a federal court sitting in diversity applies state law to determine the availability of equitable relief. But *Sims* does not control here. In that diversity action, the district court awarded the plaintiff a preliminary injunction under Federal Rule of Civil Procedure 65 despite a California statute expressly prohibiting the issuance of an injunction under the circumstances. *Id.* at 646. We reversed and held that because "the outcome [of the case] is in large part determined at the preliminary injunction stage," state law controls whether a federal court should grant preliminary injunctive relief. *Id.* at 647. And in accord with *York*, we noted that "[t]he general equitable powers of federal courts should not enable a party suing in diversity to obtain an injunction if state law clearly rejects the availability of that

remedy." *Id.*; *see York*, 326 U.S. at 110 ("Plainly enough, a statute that would completely bar recovery in a suit if brought in a State court bears on a State created right vitally and not merely formally or negligibly.  As to consequences that so intimately affect recovery or non-recovery a federal court in a diversity case should follow State law.").

In contrast to *Sims*, we must now decide whether a federal court sitting in diversity can award equitable restitution under state law if an adequate legal remedy exists. Injunctive relief is not at issue, nor is Sonner exploiting the federal judiciary to access a remedy that California "clearly rejects."  *See Sims*, 863 F.2d at 647.  Our inquiry instead aligns directly with the rigid restrictions on a federal court's equitable powers explicitly enumerated in *York*.  Indeed, since *Sims*, we have confirmed that a state "statute does not change the nature of the federal courts' equitable powers." *See Can. Life Assurance Co. v. LaPeter*, 563 F.3d 837, 843 (9th Cir. 2009) (holding that federal equitable principles govern the appointment of a receiver independent of state law); *see also Barranco v. 3D Sys. Corp.*, 952 F.3d 1122, 1129 (9th Cir. 2020) (recognizing, in a diversity action where state law allowed equitable relief, that "'[t]he necessary prerequisite' for a court to award equitable remedies is 'the absence of an adequate remedy at law'" (quoting *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 478 (1962))).[5]

---

[5] Sonner's reliance on *McKesson HBOC, Inc. v. New York State Common Retirement Fund, Inc.*, 339 F.3d 1087 (9th Cir. 2003), likewise does not support her desired outcome. *McKesson* addressed neither *Erie* nor *York*, and the court simply assumed that state law governed the availability of equitable remedies.  *See* 339 F.3d at 1093-94.  We thus are not bound by that decision.  *See, e.g., Galam v. Carmel (In re Larry's Apartment, L.L.C.)*, 249 F.3d 832, 839 (9th Cir. 2001) ("[Q]uestions

Finally, our decision mirrors those of several other circuits, which have concluded, consistent with *York*, that state law cannot circumscribe a federal court's equitable powers even when state law affords the rule of decision. *See Davilla v. Enable Midstream Partners L.P.*, 913 F.3d 959, 972–73 (10th Cir. 2019) ("The Supreme Court has concluded that 'State law cannot define the remedies which a federal court must give' . . . . Thus, the practice of borrowing state rules of decision does not apply with equal force to determining appropriate remedies, especially equitable remedies, as it does to defining actionable rights." (quoting *York*, 326 U.S. at 105));[6] *SSMC, Inc., N.V. v. Steffen*, 102 F.3d 704, 708 (4th Cir. 1996) (rejecting the argument that district court erred in issuing a remedy beyond what state law permitted because "[s]tate law cannot define the remedies which a federal court must give simply because a federal court in diversity jurisdiction is available as an alternative tribunal to the State's courts" (alteration in original) (quoting *York*, 326 U.S. at 106)); *Perfect Fit Indus., Inc. v. Acme Quilting Co.*, 646 F.2d 800, 806 (2d Cir. 1981)

---

which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having so decided as to constitute precedents." (quoting *Webster v. Fall*, 266 U.S. 507, 511 (1925))); *Lum v. City & Cty. of Honolulu*, 963 F.2d 1167, 1170 n.1 (9th Cir. 1992) (noting that cases which "stumble into decisions on questions neither raised nor discussed by the parties or by the trial court are not treated as authoritative on those unstated assumptions and nonlitigated points").

[6] Prior to *Davilla*, then-Judge Gorsuch observed that "[w]hen addressing cases arising under the diversity statute, we've seen the Supreme Court has likewise suggested that diversity authority doesn't necessarily endow federal district courts the power or authority to issue every form of equitable relief a state court might possess in the same situation." *Niemi v. Lasshofer*, 728 F.3d 1252, 1259 (10th Cir. 2013) (citing *York*, 326 U.S. at 105).

("State law does not govern the scope of the equity powers of the federal court; and this is so even when state law supplies the rule of decision."); *Oneida Indian Nation of N.Y. State*, 464 F.2d at 922 (holding that "[i]t is settled that federal courts may not apply state statutes expanding equity jurisdiction beyond that prevailing when the Constitution was adopted," including "cases in which there was no 'plain, adequate and complete remedy at law'"); *Clark Equip. Co. v. Armstrong Equip. Co.*, 431 F.2d 54, 57 (5th Cir. 1970) ("Federal courts in diversity cases [have] the power to enforce State-created substantive rights by well-recognized equitable remedies even though such remedy might not be available in the courts of the State."); *Hertz v. Record Publ'g Co. of Erie*, 219 F.2d 397, 398 n.2 (3d Cir. 1955) ("Federal remedies are not limited or affected by state law."); *see also Nat'l P'ship Inv. Corp. v. Nat'l Hous. Dev. Corp.*, 153 F.3d 1289, 1291–92 (11th Cir. 1998) (citing *Pusey & Jones* and *York* to hold that federal law governs the appointment of a receiver in a diversity case because the equitable remedy of receivership is not a substantive right); *Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc.*, 999 F.2d 314, 316 (8th Cir. 1993) (holding that federal law and federal equitable principles govern the appointment of a receiver in a diversity case).

At bottom, "[t]hat a State may authorize its courts to give equitable relief unhampered by" the "restriction[]" that an adequate remedy at law be unavailable "cannot remove th[at] fetter[] from the federal courts." *York*, 326 U.S. at 105–06. Guided by that instruction, we hold that the traditional principles governing equitable remedies in federal courts, including the requisite inadequacy of legal

remedies, apply when a party requests restitution under the UCL and CLRA in a diversity action.[7]

### D

Under these principles, Sonner must establish that she lacks an adequate remedy at law before securing equitable restitution for past harm under the UCL and CLRA. *See Mort v. United States*, 86 F.3d 890, 892 (9th Cir. 1996) ("It is a basic doctrine of equity jurisprudence that courts of equity should not act . . . when the moving party has an adequate remedy at law." (ellipsis in original) (quoting *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381 (1992))); *see also, e.g.*, *Franklin v. Gwinnett Cty. Pub. Sch.*, 503 U.S. 60, 75–76 (1992) (holding that when "remedies are equitable in nature . . . it is axiomatic that a court should determine the adequacy of a remedy in law before resorting to equitable relief"); *Schroeder v. United States*, 569 F.3d 956, 963 (9th Cir. 2009) ("[E]quitable relief is not appropriate where an adequate remedy exists at law.").

Sonner fails to make such a showing.  Initially, the operative complaint does not allege that Sonner lacks an adequate legal remedy.  *See O'Shea v. Littleton*, 414 U.S. 488, 502 (1974) (holding that a complaint seeking equitable

---

[7] We need not linger long on Sonner's argument that "under federal law" we look to the legislature's intent with respect to "whether a statute provides for equitable remedies irrespective of an adequate-remedy-at-law."  The cases Sonner cites apply when equitable relief is sought under a federal statute, not a state statute.  *See United States v. Oakland Cannabis Buyers' Coop.*, 532 U.S. 483, 497 (2001) (addressing injunctions under the Controlled Substances Act); *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 316 (1982) (addressing injunctions under the Federal Water Pollution Control Act).  Federal equitable principles are not subject to qualification by the intent of California's legislature.

relief failed because it did not plead "the basic requisites of the issuance of equitable relief" including "the inadequacy of remedies at law"). More importantly, Sonner concedes that she seeks the same sum in equitable restitution as "a full refund of the purchase price"—$32,000,000—as she requested in damages to compensate her for the same past harm. Sonner fails to explain how the same amount of money for the exact same harm is inadequate or incomplete, and nothing in the record supports that conclusion.[8]

Accordingly, because Sonner fails to establish that she lacks an adequate remedy at law, we hold, albeit on alternative grounds, that the district court did not err in dismissing Sonner's claims for equitable restitution under the UCL and CLRA.

III

Turning to the final issue before us, we conclude that the district court did not abuse its discretion in denying Sonner leave to amend her complaint for a third time to reallege the CLRA damages claim. Sonner strategically chose to amend her complaint on the eve of trial to drop her damages claim. Premier opposed Sonner's request to amend, arguing that Sonner needed to establish a lack of legal remedy before

---

[8] Sonner's citation to *American Life Insurance Co. v. Stewart*, 300 U.S. 203, 214 (1937), is unavailing. There, the Court held that "[a] remedy at law does not exclude one in equity unless it is equally prompt and certain and in other ways efficient." *Id.* But Sonner fails to explain how damages are any less prompt, certain, or efficient than restitution, particularly when a jury trial for damages was just two months away when she amended her complaint. Likewise, that California enacted the UCL to create new "remedies" not "available at common law," *see Nationwide Biweekly Admin., Inc.*, 2020 WL 2107914 at *21, is not dispositive because it does not account for subsequently enacted statutes, such as the CLRA.

seeking equitable restitution and warning that it would file a motion to dismiss on that basis.  The district court then cautioned Sonner prior to the amendment about the risk she was taking in dropping the damages claim on the eve of trial. Under these these circumstances, the district court did not abuse its "particularly broad" discretion in denying leave to amend. *See Chodos v. W. Publ'g Co.*, 292 F.3d 992, 1003 (9th Cir. 2002) (citation omitted); *see also AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006) ("[A] district court need not grant leave to amend where the amendment:  (1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile.").

IV

Regardless of whether California authorizes its courts to award equitable restitution under the UCL and CLRA when a plain, adequate, and complete remedy exists at law, we hold that federal courts rely on federal equitable principles before allowing equitable restitution in such circumstances. And because Sonner fails to demonstrate that she lacks an adequate legal remedy in this case, we affirm the district court's order dismissing her claims for restitution.[9]

**AFFIRMED.**

---

[9] We deny Sonner's request for judicial notice, and motion to certify a question to the California Supreme Court, because neither is relevant to the resolution of this appeal.  *See Santa Monica Food Not Bombs v. City of Santa Monica*, 450 F.3d 1022, 1025 n.2 (9th Cir. 2006).